1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVE MOSHTAGH, an individual, on behalf of himself and others similarly situated,<br><br>                     Plaintiffs,<br>vs.<br><br>THE HOME DEPOT U.S.A., INC. a Delaware Corporation,<br>                    Defendant. | No. 2:19-cv-01205-RSM<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Home Depot U.S.A., Inc. ("Home Depot")'s Motion for Partial Summary Judgment.  Dkt. #73.  Home Depot moves for summary judgment on Plaintiff Steve Moshtagh's claims for: (1) unlawful wage deductions for donations to The Homer Fund (First Cause of Action); (3) unpaid wages for off-the-clock waiting time after store closing (Third Cause of Action); (4) double damages for willful withholding of wages (Fourth Cause of Action); and (5) violation of Washington's Consumer Protection Act (Fifth Cause of Action).  *Id*. at 7.  Mr. Moshtagh has filed an opposition.  Dkt. #135.  The Court has determined that oral argument is unnecessary, and, for the reasons stated below, GRANTS IN PART this Motion.  Class certification in this matter is still pending.  *See* Dkt. #39.

## II.  BACKGROUND

In 2014 Plaintiff Moshtagh first started working for Home Depot in a Palm Springs, California store.  Dkt. #76-1, Ex. A ("Moshtagh Dep."), 13:12-16, 26:1-7.

In February of 2016, Mr. Moshtagh submitted his resignation so he could move closer to his sick mother, who lived in Kirkland, Washington. *Id*. at 27:2-20; 116:5-24. Home Depot instead offered to transfer him to a store location in Bothell, Washington, and he accepted the transfer. *Id.*

At the Bothell store, Mr. Moshtagh worked in "special services" for about six months, then on the freight team, then as a cashier. *Id*. at 144:21-145:1. During his employment in Washington, plaintiff earned an hourly wage of $11.25 or more. Dkt. #75 ("Dixon Decl."), ¶ 4.

In March 2019, Mr. Moshtagh called the Home Depot hotline (AwareLine) to report that he was not getting rest breaks when he worked a five-hour shift. Moshtagh Dep. at 69:11-13. Home Depot conducted an investigation, finding that many witnesses disputed Mr. Moshtagh's account, and that Mr. Moshtagh's statements were "contradictory." *See* Dkt. #73 at 10–11. Mr. Moshtagh stopped reporting to work in April of 2019 and was fired. *Id*. at 76:20-22.

Mr. Moshtagh filed a proposed class action in King County Superior Court on June 28, 2019. Dkt. #1-2. The case was removed to this Court on August 1, 2019. Dkt. #1. He alleges the following causes of action: Unlawful Wage Deductions for Home Depot's policy and practice of deducting money from paychecks for The Homer Fund charity, failure to provide rest breaks, failure to pay for all time on duty, willful withholding of wages, and a Washington Consumer Protection Act ("CPA") claim. Additional facts for these claims are discussed in greater detail below.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter,

but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. The Homer Fund Deduction Claims**

The Homer Fund is a nonprofit charity, established in 1999, funded mainly by voluntary donations from Home Depot employees for the purpose of providing emergency financial assistance to Home Depot employees in need. Dkt. #76-1 Ex. D ("Robinson Dep.") at 9:3-6, 94:21-25. The Homer Fund is affiliated with THDF II, Inc., a registered 501(c)(3) organization not legally part of Home Depot. *Id*. at 9:7-16; Dkt. #74 ("Robinson Decl."), ¶¶ 3, 4. The Homer Fund maintains separate bank accounts from Home Depot and from The Home Depot Foundation, a separate charitable part of THDF II, Inc. Robinson Dep. at 25:13-25, 42:2-23; Robinson Decl. ¶¶ 3, 4.2.

Mr. Moshtagh claims that Home Depot deducted money from his paycheck for the Homer Fund in violation of WAC 296-126-028, RCW 49.46 *et seq.*, RCW 49.48 *et seq.*, and RCW 49.52 *et seq*. Dkt. #1-2 at 11. He alleges that the Homer Fund is "an agent and instrumentality" that is controlled entirely by Home Depot. *Id*. at 4. He alleges that employees "are heavily pressured to sign forms authorizing such deductions." *Id*. at 5. Although the Homer Fund is a charity set up to assist Home Depot employees in need, Mr. Moshtagh claims that "only a small fraction of

employees who 'donate' actually receive charity from The Homer Fund," and that "[g]iving to The Homer Fund is no guarantee that an employee will actually receive money from The Homer Fund." *Id*. at 6. Mr. Moshtagh alleges that Home Depot derives "substantial benefit" from these payroll deductions, mainly by getting good public relations by advertising about the charity. *Id*.

As an initial matter, the Court finds that Mr. Moshtagh has abandoned his claims that the Homer Fund deductions violate RCW 49.46 and 49.48. Home Depot points out in a footnote that "plaintiff has apparently abandoned these allegations," and that in any event "plaintiff was paid an hourly rate of $11.25 or more, which exceeded the minimum wage even after the deduction of his $0.50 per week donation during the brief period he contributed to the Homer Fund." Dkt. #73 at 13-14 n.4. Mr. Moshtagh does not contest this characterization and otherwise fails to make a sufficient showing on these claims.

WAC 296-126-028 states that "an employer may deduct wages when the employee expressly authorizes the deduction in writing and in advance for a lawful purpose for the benefit of the employee," and that "the employer… can [not] derive any financial profit or benefit from any of the deductions under this regulation."

Under the Wage Rebate Act, RCW 49.52.050, an employer may not "collect or receive from any employee a rebate of any part of wages theretofore paid by such employer to such employee." RCW 49.52.050(1). The Wage Rebate Act was enacted in 1939 as an "anti-kickback" statute intended to "prevent abuses by employers in a labor-management setting, *e.g.*, coercing rebates from employees in order to circumvent collective bargaining agreements." *LaCoursiere v CamWest Dev., Inc.*, 181 Wn.2d 734, 741 (2014) (citations omitted). To state a claim under RCW 49.52.050, an employee must show that the party unlawfully receiving or collecting rebated wages "was *both* an agent and had control over the payment of wages." *Rekhter v. Dep't of Social & Health Servs.*, 180 Wn.2d 102, 123 (2014) (emphasis in original).

It is undisputed that Mr. Moshtagh consented to deductions from his paycheck to this charity. *See* Moshtagh Dep. at 89:9-16, 112:14-25. On each of two occasions, he authorized Home Depot to make recurring payroll deductions of $1.00 per pay period. *Id.* at 96:16-22. Home Depot presents undisputed evidence that these deductions go directly to the Homer Fund, and that Home Depot itself does not retain any of the money. Dkt. #76-1 Ex. E ("Dixon Dep."), 28:10-29:19, 51:25-52:1, and 54:25-55:3.

Mr. Moshtagh alleges in his Complaint that Home Depot improperly pressured employees to donate. *See* Dkt. #1-2 at 5 ("Hourly Store Employees are heavily pressured to sign forms authorizing such deductions."). He also presents substantial facts about this in briefing, although it is not a focus of argument. *See* Dkt. #135 at 9 ("It was in this environment that Mr. Moshtagh—and all other Washington employees—made his Homer Fund donations. He did so reluctantly…"). Mr. Moshtagh does not argue that the donations were procured under duress; instead he says the pressure reflects that Home Depot must have been obtaining a benefit from the donations in violation of state law.

As framed by Plaintiff, Home Depot "maintains a persistent public relations campaign that touts the Homer Fund as an example of Home Depot's corporate commitment to its workforce and social causes." Dkt. #135 at 14 (citing, *e.g.*, press releases, the annual Shareholder Report, and website posts). Mr. Moshtagh explains that "[a] reasonable inference from these undisputed facts is that Home Depot benefits from the payroll deductions…. Why else would Home Depot (a publicly traded, for-profit company) go to such great lengths to ensure particular participation rates?" *Id.* Mr. Moshtagh maintains that he "has an admission" from Home Depot that it "benefits from the payroll deductions" because an exhibit used in a 30(b)(6) deposition, the "2020 Community Captain Manual" has Home Depot stating that "sharing our story matters" because "consumers prefer 'a brand known for its social value' and 'want companies to take the lead on

social issues.'" *Id.* (citing Dkt. #41 (filed under seal)). The actual document states that "71% of millennials want companies to take the lead on social issues" and that "56% of consumers said they are more likely to buy from a brand known for its social value." Dkt. #41 at 61.

Home Depot argues that the only evidence of Mr. Moshtagh personally being pressured was a manager saying, "Come on Steve, it's just a dollar." Dkt. #73 at 12 (citing Moshtagh Dep. at 101:16-24, 104:7-16). While this may be an exaggeration—certainly there is evidence that there was an effort to pressure employees to donate—Mr. Moshtagh has admitted in deposition that he was never threatened with discipline or any negative consequence if he declined to contribute to the Homer Fund, and that he was not aware of any other employees who experienced such consequence. *See* Moshtagh Dep. at 96:10-15, 110:11-21. Home Depot points out that Mr. Moshtagh in fact stopped his donations at least twice and did not experience any discipline or negative consequence. Dkt. #73 at 12–13.

Home Depot also argues that Mr. Moshtagh has failed to present any evidence that the Homer Fund was an "agent" of Home Depot and that therefore the donations were not a "rebate" as a matter of law under RCW 49.52.050. *Id.* at 15.

As an initial matter, the Court finds the discussion about the "pressure" applied to employees to donate to be, in the end, legally inconsequential. The record fails to show that Mr. Moshtagh had these deductions taken from his paycheck without his express permission in writing.

The record also fails to demonstrate that the Homer Fund was an agent of Home Depot, and that Mr. Moshtagh thus fails to set forth a claim for violation of RCW 49.52.050 as a matter of law. *See Rekhter*, *supra*. There is no genuine dispute on this fact. Technically and practically these were not rebates but were solicited donations to a charity with connections to Home Depot. This situation is not comparable to cases where an employee and an employer enter into an agreement that the employee will accept less than the amount owed, because Home Depot is still paying the

employees what they are owed and its employees are voluntarily deducting from their paycheck an amount they wish to send to a charity.

The payroll deduction does not otherwise violate WAC 296-126-028. The parties appear to agree that Home Depot receives no financial *profit* from the deductions, and the argument that Home Depot otherwise acquires some intangible "benefit" from the Homer Fund deductions relies on speculation from Mr. Moshtagh. The Court reads the phrase "financial profit or benefit," in the regulation to mean a financial profit or financial benefit. As Mr. Moshtagh concedes, no Washington case has construed the term "benefit" in the context of a WAC 296-126-030 claim for illegal deductions. Dkt. #135 at 15. Even if *any* kind of benefit was prohibited by the regulation, the benefit Mr. Moshtagh focuses on—driving more customers to Home Depot—is not sufficiently supported by the record. There is support in the record to conclude that the benefit of these donations are the eventual recipients of the funds. Every employee who voluntarily donates to this charity could potentially become a recipient if their circumstances took a turn for the worse. In this small way, each donor, including Mr. Moshtagh, receives a benefit from making the donation. As Home Depot points out, their paycheck deduction service also provides administrative convenience for employees who would otherwise donate by cash, check or credit card and, of course, employees may receive a tax break for their donation. These benefits are small, and it may be true, as Mr. Moshtagh argues, that "whether Homer Fund donations benefit the donor is irrelevant," since he is not really arguing that the lack of a benefit violates the regulation. In any event, while Home Depot may have irritated Mr. Moshtagh with its high-pressure donation campaign, he has failed to demonstrate that such actions rise to a violation of WAC 296-126-028.

**C. Claim for Unpaid Wages while Waiting to Exit**

Mr. Moshtagh claims that Home Depot's policy and practice of requiring employees "to clock out and then wait for a manager to unlock the store doors before leaving the premises" violates

RCW 49.46.020, 49.46.090, and 49.52.050. Dkt. #1-2 at 12–13. RCW 49.46.020 deals with paid sick leave. RCW 49.46.090 establishes employer liability for underpaying. RCW 49.52.050 is the Wage Rebate Act, discussed above. As the Court understands it, Mr. Moshtagh is simply claiming that he did not get paid for time on the clock.

While Home Depot may dispute whether Mr. Moshtagh actually stood around for a significant amount of time waiting to exit his store, its only argument on summary judgment is that the law requires knowledge, *i.e.* that it knew he had uncompensated wait time, and that such was lacking here. Dkt. #73 at 19-21. Home Depot relies on *United Food & Commercial Workers Union Local 1001 v. Mut. Ben. Life Ins. Co.*, 84 Wash. App. 47, 52 (1996), *abrogated on other grounds by Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824 (2000); *Thola v. City of Liberty Lake*, No. 12-CV-0452-TOR, 2013 WL 5138943, at *11 (E.D. Wash. Sept. 13, 2013); and *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). *Id.* at 21–22.

Mr. Moshtagh responds by arguing that *United Food* discussed this requirement, coming from *Forrester, supra*, in dicta and that Home Depot cites to the wrong standard for compensable time. Dkt. #136 at 25 n.7. He argues that the Court in *Thola* conflated the FLSA and Washington law. *Id.* at 25. Mr. Moshtagh cites *Cisneros v. TruckVault, Inc.*, No. C17-402 MJP, 2018 WL 4335606, at *9 (W.D. Wash. Sept. 11, 2018) for the proposition that the *Forrester* knowledge requirement does not apply here and that "[t]he burden is clearly on the employer, not the employee, to comply with the state's compensation regulations." *Id.* at 24. Mr. Moshtagh also proposes the following as disputes of fact precluding summary judgment:

> Here, Home Depot intentionally promulgated the policies that caused Mr. Moshtagh and others to incur uncompensated time, and its own witnesses concede that those policies require employees to wait and is controlled by Home Depot.
>
> …

Mr. Moshtagh testified at his deposition that salaried assistant managers sometimes unlocked the door for him to get out. These assistant managers (and other key carriers) at Home Depot generally known when shifts end…. Thus, the assistant managers who let Mr. Moshtagh out of the store knew that Mr. Moshtagh's shift had ended between 5 and 20 minutes prior to their unlocking the door.

Dkt. #135 at 25–26.

On Reply, Home Depot argues that Plaintiff is reading Washington case law incorrectly and that "it is a defense to liability under Washington law if 'an employer has no knowledge that an employee is engaging in [uncompensated] work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the [uncompensated] work.'" Dkt. #139 at 12 (quoting *Thola v. City of Liberty Lake*, No. 12-CV-0452-TOR, 2013 WL 5138943, at *11 (E.D. Wash. Sept. 13, 2013)). Home Depot distinguishes the fact pattern here from that in *Cisneros*. *Id.* Home Depot responds to the disputes of fact thusly:

Plaintiff also posits that managers and department supervisors saw him waiting when they unlocked the door for him. Dkt. No. 135 pp. 25-26. Particularly in light of the policy requiring plaintiff to regularly review and correct any errors or omissions in his time records, the mere fact that a manager (or non-exempt department supervisor) may have seen plaintiff waiting at the door is insufficient to create a triable issue of fact that Home Depot knew that he was waiting for longer than the few seconds he was observed, and/or that any wait time was uncompensated. The sole case cited by plaintiff involved an instance where the employer did not have a policy prohibiting off-the-clock work, and the plaintiff expressly told her manager that she could not finish her tasks during her shift time. *Chastain v. Cam*, No. 3:13-CV-01802-SI, 2016 WL 1592712, at *3 (D. Or. Apr. 20, 2016). Based on these facts, the court inferred that the employer may have known that the plaintiff was performing off-the-clock work. *Id.*

It is undisputed that plaintiff never reported his waiting time, and there is no evidence that any manager or supervisor who observed plaintiff knew whether (a) he had already clocked out, (b) he had been waiting for more than a few seconds, or (c) that he did not submit a time correction form to be compensated for the time. Dkt. No. 76-1 pp. 47, 53-63 (Moshtagh tr. 166:4- 9, 166:18-22, ex. 5).

Plaintiff has therefore failed to raise a triable issue of fact, and summary judgment is warranted.

Dkt. #139 at 13–14.

The Court agrees with Home Depot's analysis of Washington law. *Cisneros*, *supra*, does not hold that *United Food*'s discussion of *Forrester* is inapplicable under Washington law, but rather that the Defendant in that case was misinterpreting *Forrester*. While it would be incorrect to say that an employer always escapes liability if an employee fails to file a request to adjust a paycheck, *Cisneros* favorably quotes *Forrester* for the proposition that there is no liability where the employee fails to notify the employer *and* the employer has no knowledge of the unpaid work. *Cisneros* at *22.

Plaintiff has failed to present evidence that Home Depot had knowledge of his personal time spent waiting around to leave. Plaintiff has filed his own declaration in response to this Motion stating that "on virtually every shift" he had to wait "between 5 and 20 minutes" to exit the store after he clocked out in the break room. Dkt. #136, Declaration of Steve Moshtagh ("Moshtagh Decl."), ¶ 3. Plaintiff does not submit an estimate for his total wait time, specific dates when he had to wait, or deposition testimony from Home Depot supervisors who had knowledge that he was waiting around. While Plaintiff does submit evidence in his Class Certification Motion that other employees shared this problem, *see* Dkt. #39 at 13, this does not save his personal claim. The Court agrees that mere speculation that a supervisor must have seen Plaintiff waiting at the door for several minutes is insufficient to create a triable issue of fact that Home Depot knew that any wait time was uncompensated.

Mr. Moshtagh was aware of Home Depot's policy that working off the clock was prohibited. Moshtagh Dep. at 140:8-14. Throughout his employment, he had access to his time records, which showed the hours he worked, when he clocked in, and when he clocked out. *Id.* at 130:1-23. He

regularly reviewed his time reports to check that his hours, punch times, and break times were recorded accurately. *Id*. at 130:24-131:2, 131:10-20. He knew that he had to complete a "Time & Attendance Change Request" to correct any hours. *Id*. at 130:24-132:11. He also knew that he could speak to his manager or HR about any error with his hours or wages. *Id*. at 133:7-14, 134:9-16. On at least eleven occasions, Mr. Moshtagh completed Time & Attendance Change requests to correct his time records, including reporting additional time that was not captured by his time punches, and plaintiff was paid for the corrected time. *See id*. at 135:13-21, 136:1-22. However, as Home Depot is eager to point out, Mr. Moshtagh never reported that he had to wait for someone to unlock the door when his shift ended, and he never asked a Home Depot manager if he could submit a Time & Attendance Change request to be paid for waiting time. *Id*. at 166:4-9, 166:18-22. Home Depot has stated in a 30(b)(6) deposition that it is not aware of claims for unpaid waiting time from any other employees in Washington. Dkt. #76-1, Ex. B ("Korkow Dep."), 119:13-18, 144:18-24.

Mr. Moshtagh contends he was never trained on this issue and, although he used the forms on other occasions for other reasons, "he did not know that he could request payment for his waiting time." Moshtagh Decl. at ¶ 8.

The Court finds Mr. Moshtagh has failed to show that Home Depot's policy must have inherently led to unpaid wages as Home Depot submits evidence of how employees could avoid this problem proactively, Dkt. # 73 at 20 ("key carriers know when employee shifts are scheduled to end and proactively wait at the exit door so that employees can leave after clocking out;" employees can "clock out at the computers near the exit door so they remain 'on the clock' until they leave") and Home Depot permits employees to check and correct their time records, *id.* Mr. Moshtagh does not submit evidence that he tried to correct his time records and was told that he could not, or that he would otherwise not be compensated for waiting to leave. Given all of the

above, Mr. Moshtagh has failed to make a sufficient showing on an essential element of this claim and it will be dismissed on summary judgment.

### D. Double Damages/Willful Withholding Claim

The Complaint's fourth cause of action claims that all of Home Depot's actions related to withheld wages were "willful," entitling Plaintiffs to double damages under RCW 49.52.050.

The question of willfulness only applies to remaining claims. Home Depot has chosen not to move for summary judgment of Mr. Moshtagh's failure to provide rest breaks claim. While the question of "willfulness" often involves factual questions, "where the material facts are not disputed, a court may dispose of this claim on summary judgment." *Jones v. Rabanco. Ltd.*, 439 F Supp. 2d 1149, 1168 (W.D. Wash. 2006). Home Depot explicitly argues "there is a genuine dispute as to Plaintiff's rest period claim" in an attempt to trigger an affirmative defense to willfulness. Dkt. #73 at 26–27. It certainly appears from the record that there is a genuine dispute between various witnesses, and that Home Depot believed certain witnesses over Mr. Moshtagh's account of what happened. The Court finds that it has been given limited information on this topic and is essentially being asked to resolve a material factual dispute, which it cannot do on summary judgment. The question of willfulness as to the rest break claim is best left for the finder of fact.

### E. CPA Claim

The Complaint alleges that "Home Depot's failure to pay Class Members in accordance with Washington law is a deceptive act or practice in trade or commerce," that "Home Depot's communications to the general public regarding its pay practices and the Homer Fund are deceptive acts or practices in commerce," and that Plaintiff Moshtagh "has been injured in his business or property by Home Depot's wrongful conduct." Dkt. #1-2 at 13.

"To prevail in a private [Consumer Protection Act] claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public

interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885, 889 (2009) (citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 786, 719 P.2d 531 (1986)).

Home Depot argues that Plaintiff's CPA claims fail as a matter of law because "the alleged deceptive statements – that Home Depot complies with Washington wage and hour laws, and that the Homer Fund is a charity that assists Home Depot employees through voluntary donations – do not impact the public interest, but only Home Depot employees, and is therefore not the type of conduct that can support a CPA claim." Dkt. #73 at 27.

In Response, Mr. Moshtagh cites a single case out of the Eastern District, *Sanders v. W. Express, Inc.*, No. 1:20-CV-03137-SAB, 2021 U.S. Dist. LEXIS 30430 (E.D. Wash. Feb. 11, 2021). In that case the employer defendant "advertis[ed] employment opportunities that contained false representations about wages or benefits," specifically, that the employer "represented to the public that it would pay its employees at a certain rate and … failed to do so." *Sanders* at *15-16.

Home Depot argues that its "general statement that Home Depot complies with the law does not contain the kind of specific representations about wages that could support a CPA claim." Dkt. #139 at 17 (citing *Aziz v. Knight Transp.*, No. 2:12-CV-00904RSL, 2012 WL 3596370, at *2 (W.D. Wash. Aug. 21, 2012)). Home Depot points out that Mr. Moshtagh has failed to present evidence that it made any false representations to plaintiff about his wages, or that plaintiff relied on any such statements in applying for employment.

The Court agrees. Mr. Moshtagh has failed to present evidence of the kind of communications affecting the public interest that could support his CPA claim. *Sanders* is factually distinct and procedurally distinct in that the court there was ruling on a motion to dismiss. Accordingly, this claim too will be dismissed.

# IV. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

1) Home Depot's Motion for Partial Summary Judgment, Dkt. #73, is GRANTED IN PART.

2) Plaintiff Moshtagh's claims for unlawful wage deductions for donations to The Homer Fund (First Cause of Action); (3) unpaid wages for off-the-clock waiting time after store closing (Third Cause of Action); (4) double damages for willful withholding of wages (Fourth Cause of Action); and (5) violation of Washington's Consumer Protection Act (Fifth Cause of Action) are DISMISSED, except for Plaintiff's claim for willful withholding as to his rest break claim (Second Cause of Action).

3) The Court believes this Order substantially affects Plaintiff's pending Motion for Class Certification, Dkt. #39. The Court DIRECTS the parties to meet and confer telephonically and file a joint status report, not to exceed six (6) pages, setting forth the parties' positions on the effect of these rulings. This report is due no later than fourteen (14) days from the date of this Order.

DATED this 13th day of May, 2021.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE